**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

BILL H.,
individually and on behalf of
S.H., a minor,

      Plaintiff,

v.                                                                    Case No. 8:25-cv-647-TPB-LSG

ANTHEM BLUE CROSS, AMGEN, INC.,
and THE AMGEN
TRADITIONAL PPO HEALTH PLAN,

      Defendants.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

This matter is before the Court on "Defendants' Joint Motion to Dismiss Amended Complaint," filed on June 2, 2025.  (Doc. 49).  Plaintiff filed a response in opposition on July 15, 2025.  (Doc. 56).  After reviewing the motion, response, court file, and record, the Court finds as follows:

### Background

This case brought by Plaintiff Bill H. under the Employee Retirement Income Security Act of 1974 ("ERISA") arises from a claim for benefits under an insured employee welfare benefits plan.  Defendants' joint motion to dismiss Plaintiff's amended complaint raises multiple technical issues relating to ERISA's application for which there is no controlling authority in this Circuit.  This Court's Order therefore discusses these issues at some length.

Plaintiff is a participant in the Amgen Traditional PPO Health Plan (the "Plan"), an insured employee welfare benefits plan governed by ERISA.  S.H., Plaintiff's son, is a beneficiary of the Plan through Plaintiff.  Defendant Anthem Blue Cross is the third-party claims administrator and an agent for the Plan.  Defendant Amgen, Inc. is the Plan Administrator.

S.H., a minor, suffered from, among other things, autism spectrum disorder and various behavioral issues.  He was treated at an inpatient facility for his conditions beginning on February 15, 2022.  On April 15, 2022, Anthem informed Plaintiff that it had determined that continuing residential treatment of S.H. at the facility was no longer medically necessary and denied further inpatient coverage.  Plaintiff appealed the decision.  Anthem upheld the decision and informed Plaintiff by letter dated October 12, 2022.  Plaintiff thereafter requested an external review.  The external reviewer upheld Anthem's adverse benefit determination and informed Plaintiff by letter dated June 21, 2023.  Plaintiff also requested various documents from Amgen, which in response provided some but not all the requested documents.

Plaintiff filed suit against Anthem, Amgen, and the Plan on November 29, 2024. Plaintiff's amended complaint asserts claims against Anthem and the Plan for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) (Count I), for violation of Mental Health Parity and Addiction Equity Act ("MHPAEA") and breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) (Count II), and for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) (Count III).  Plaintiff also asserts a claim against the "Plan Administrator" for statutory penalties under 29 U.S.C. § 1132(a)(1)(A) and (c) for failing to provide requested documents within thirty days (Count IV).

Defendants have moved to dismiss the Counts I, II, and III of the amended complaint on the ground that Plaintiff failed to file suit on these claims within one year after the appeal decision as required by the Plan.  Defendants argue that Count II should also be dismissed as duplicative of Plaintiff's claim for benefits under Count I, and that Count IV should be dismissed because Anthem is not legally responsible for producing responsive documents and Amgen provided all documents it was legally required to produce.

### Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face."  *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint.  *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  Furthermore, when reviewing a complaint for facial sufficiency, a court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff."  *Id.*  (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the

merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. Oct. 9, 2009) (Lazzara, J.).

A complaint may be dismissed based on an affirmative defense "when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir. 1993).

## Analysis

### *Counts I, II, and III are Barred by the Plan Limitations Provision*

Defendants argue that Counts I, II, and III of the amended complaint are barred by the one-year limitation on filing suit provided in the Plan.  For the reasons set forth below, the Court agrees with Defendants and rejects Plaintiff's arguments to avoid the enforcement of the Plan limitation period.[1]

Plaintiff's Failure to Comply with the Plan Limitation Period

Count I of the amended complaint asserts a claim for recovery of benefits under § 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B).  ERISA provides no statute of limitation for claims for benefits under this subsection.  Federal courts therefore apply the state statute of limitation for the most closely analogous state law claim.  *See Wilson v. Standard Ins. Co.*, 613 F. App'x 841, 842 (11th Cir. 2015). Plaintiff argues the appropriate state law statute of limitation for his claim for benefits provides a two-year period for filing suit.

---

[1] Defendants alternatively move to dismiss Count II on the ground that it is impermissibly duplicative of Count I.  Because the Court dismisses Count II based on the limitation analysis below, the Court declines to address this alternative argument for dismissal.

Counts II and III of the complaint seek equitable relief for breach of fiduciary duty under § 502(a)(3) of ERISA, codified at 29 U.S.C. § 1132(a)(3). ERISA contains a statute of limitation for fiduciary duty claims, which provides that no such action may be brought later than the earlier of (1) six years after the date of the last act constituting part of the breach or (2) three years after the earliest date the plaintiff had actual knowledge of the breach, absent fraud or concealment. *See* 29 U.S.C. § 1113.

Parties, however, may agree in an ERISA plan to a time limit for filing suit different from the one provided by statute. *See Wilson*, 613 F. App'x at 842. As long as the agreed-upon time period is reasonable, such a time limit will be enforced as written absent grounds for equitable estoppel, grounds for equitable tolling, or the existence of a "controlling statute to the contrary," that is, a statute that prohibits the parties from choosing a shorter limitation period by contract. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105-08, 114 (2013); *Wilson*, 613 F. App'x at 844.

The parties agreed to such a time limitation in the Plan governing Plaintiff's claims. Specifically, the Amgen, Inc., Traditional PPO 4000 Plan Benefit Booklet (the "Plan Booklet"), one of the Plan documents in this case, contains a provision imposing two time limits on filing suit: a three-year limitation period running from the time proof of loss must be submitted and a one-year period on actions brought under §

502(a) of ERISA, running from the decision in any administrative appeal.[2]  The Plan

provision states:

> No attempt to recover on the plan through legal or equity action may
> be made until at least 60 days after the written proof of loss has been
> furnished as required by this *plan*.  No such action may be started
> later than three years from the time written proof of loss is required to
> be furnished.  *If you bring a civil action under Section 502(a) of ERISA,*
> *you must bring it within one year of the grievance or appeal decision.*

(Doc. 49-2, at 106) (emphasis supplied).[3]

The Tenth Circuit in *J.H. v. Anthem Blue Cross Life & Health Ins. Co.*, 137

F.4th 1147 (10th Cir. 2025), addressed an identical limitation provision in an ERISA

plan and held that it unambiguously required the plaintiff to comply with both

limitation periods.  As the court explained, the two provisions are not inconsistent or

conflicting because they run from two different starting points: the three-year

provision runs from when proof of loss must be furnished; the one-year provision

"simply adds another deadline; it warns the insured to file suit within a year of the

---

[2]  Plaintiff's amended complaint references the Plan and seek benefits under the terms of the Plan.  Both Plaintiff and Defendants rely on the Plan in their arguments on Defendants' motion to dismiss, and Plaintiff does not dispute the authenticity of the Plan documents Defendants have submitted with their motion to dismiss, including the Plan Booklet.  The Court will therefore consider these documents in deciding the motion.  *See Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005) (holding that an extrinsic document may be considered on a motion to dismiss if its authenticity is undisputed, and it is central to the plaintiff's claims); *Surgery Ctr. Of Viera, LLC v. Se. Surveying & Mapping Corp.*, No. 6:17-cv-754-Orl-40TBS, 2018 WL 922202, at \*4 (M.D. Fla. Jan. 31, 2018) (considering ERISA plan documents submitted by a defendant in connection with a motion to dismiss).

[3] Another Plan document, the Amgen Inc. Master Benefits Plan and Summary Plan Description (the "Wrap Plan"), similarly provides a one-year limitation on filing suit running from the participant's exhaustion of his or her administrative remedies.  As discussed below, Plaintiff admits this provision's one year limitation is clear but asserts he did not review this document and had no reason to review it when he received it from Defendants in December 2023.

grievance or appeal decision." *Id*. at 1151. Thus, both timing requirements can be, and must be, complied with by the plan participant. *See id*. at 1151-52.

The Court finds the Tenth Circuit's analysis persuasive. Plaintiff's claims in Counts I, II, and III are brought under § 502(a) of ERISA, and therefore plainly fall within the second, one-year limitation period. Plaintiff filed suit in late November 2024, more than one year after the last appeal decision, which occurred in June 2023. Plaintiff's claims are therefore time-barred under the Plan's limitation period unless Plaintiff can avail himself of equitable tolling or equitable estoppel or can point to a controlling statute that prohibits enforcement of the Plan's limitation provision. *See Heimeshoff*, 571 U.S. at 99, 105-08, 114-15. The Court accordingly turns to these exceptions to enforcement.

Equitable Estoppel and Equitable Tolling

Plaintiff argues in opposition to Defendants' motion to dismiss that he reasonably read the limitation provision in the Plan document he possessed as giving him three years in which to file suit and acted accordingly.[4] Plaintiff's amended complaint asserts that that the running of the Plan's one-year period should be tolled until December 1, 2023, when Plaintiff received a copy of the Wrap Plan that he argues contains the first clear statement he received regarding a one-year limitation period. Alternatively, Plaintiff asserts that Defendants should be equitably estopped from raising the Plan limitation period as a defense.

---

[4] It is clear from the allegations of the amended complaint that Plaintiff possessed a copy of the Plan Booklet as of November 2022, if not earlier.

Equitable tolling may apply where a plaintiff has diligently pursued judicial review but has been prevented from timely filing suit due to extraordinary circumstances beyond his control.  *See Heimeshoff*, 571 U.S. at 114 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990)); *Wilson*, 613 F. App'x at 843. Equitable tolling requires that the plaintiff demonstrate that he or she acted with reasonable diligence.  *Wilson,* 613 F. App'x at 844-45 (citing *Motta ex rel. A.M. v. United States*, 717 F.3d 840, 846-47 (11th Cir. 2013)); *see also First Ala. Bank, N.A. v. United States*, 981 F.2d 1226, 1228-29 (11th Cir. 1993) (holding that a plaintiff asserting equitable tolling based on representations by the defendant must demonstrate that reliance on the representation was reasonable).

Equitable estoppel "prevents a defendant from invoking a statute-of-limitations defense if the defendant's conduct induced the plaintiff to forbear from bringing suit within the limitations period." *Barcelona v. Fogelgren*, 664 F. App'x 884, 886 (11th Cir. 2016).  Equitable estoppel requires that the plaintiff's reliance on the defendant's statements or conduct be reasonable.  *See Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 235 (1959) (holding that estoppel would apply if the plaintiff could prove the defendant acted in a way that the plaintiff was "justifiably misled into a good faith belief that he could begin his action at any time within seven years after it had accrued"); *Basel v. Sec. of Defense,* 507 F. App'x 873, 877 (11th Cir. 2013) (holding estoppel requires an allegation of misconduct by the opposing party on which the party asserting estoppel reasonably relied, that is, relied under circumstances where "he did not know nor should he have known that his adversary's conduct was misleading").

The Court rejects Plaintiff's argument as a basis for equitable tolling or equitable estoppel. The Plan's language providing for limitations on the time to sue does not constitute a misrepresentation or other misconduct required for estoppel, and in any event, that language cannot reasonably be read to allow Plaintiff three years in which to file suit. Under the circumstances alleged in the complaint, this is fatal to any attempt to rely on tolling or estoppel.[5] The court in *J.H. v. Anthem,* discussed above, not only held that the identical plan language required that suit be filed within one year of the appeal decision, but held that it did so unambiguously, rejecting the argument that the provision's two limitation periods were contradictory and therefore ambiguous. *Id.* at 1151-52. Nor is this reading based on "opaque legalese," as Plaintiff would have it. In fact, the *J.H.* court expressly rejected a similar characterization by the plaintiff in that case. *Id.* at 1152 (referring to "arcane legal theories.").[6] To the contrary, the *J.H.* court reached its conclusion by reference to the understanding of a

---

[5] The amended complaint asserts both equitable tolling and equitable estoppel to avoid the Plan limitation period, and the Court therefore addresses them both here. Plaintiff's estoppel argument, as pleaded, is based solely on Defendants' alleged failure to comply with a regulation requiring that the limitation period for filing suit be disclosed in the letter notifying a participant that his or her claim has been denied. Plaintiff's memorandum refers to Plaintiff's "reasonable reading" of the limitation provision as an additional basis for estoppel. The Court addresses this "reasonable reading" argument in connection with both estoppel and tolling in this section, and addresses Plaintiff's argument based on the alleged regulatory violation in a separate section below. Plaintiff has declined to address tolling in his memorandum and requests additional briefing on the issue if the Court decides to consider it. Plaintiff pleaded it, so the Court will consider it, and the request for further briefing is denied.

[6] Defendants argue that the two prong limitation provision is similar to the difference recognized in the law between a statute of limitation and statute of repose. Plaintiff argues in response that a layman cannot be expected to understand such legal distinctions. The distinction between statutes of limitations and statutes of repose may (or may not) offer a helpful analogy in explaining the limitation provision in this case but is not necessary to understand its plain language.

reasonable person in the position of the plan participant, which is the standard Plaintiff agrees should apply here. *See id.* at 1151. "Reasonable people," the court held, "would have understood they needed to bring their § 502(a) action within one year of the appeal decision." *Id.* at 1152. This conclusion fully applies to the identical Plan language at issue here.

In support of his argument that his reading was at least reasonable, Plaintiff cites *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203 (11th Cir. 2003). *Watts*, however, involved the exhaustion doctrine rather than a limitation period and did not address Plan language like that at issue here. The plan in *Watts* in one place provided that the participant "may" use administrative appeal procedures and in another place also provided that the participant "may" file suit in court. *Id.* at 1205, 1208. The Court held that the exhaustion requirement should not be enforced where a plan participant reasonably reads the plan language as giving him or her the option to pursue either an administrative appeal or a lawsuit. *Id.* at 1209-10.

Here, however, in contrast to the two arguably conflicting affirmative grants of permission involved in *Watts*, the Plan Booklet Plaintiff possessed contained two different *restrictions* on the time to file suit. The Plan's three-year provision, to be sure, uses the word "may" as did the language in *Watts*, but Plaintiff's argument takes that word out of context. The first sentence does not say the participant "may" file suit within three years from the date proof of loss is due. It says that "*no action may* be started *later* than three years" after proof of loss is due. (emphasis supplied). Similarly, the next sentence provides that the participant "*must* bring" any action under Section 502(a) of ERISA within one year of the grievance or appeal decision.

Thus, when the sentences are read in their entirety it is clear that neither affirmatively grants a period in which suit "may" be filed.  Each sentence instead imposes a separate restriction on the time within which suit must be filed.

Thus, as the court explained in *J.H.*, viewing these two sentences as providing two "windows of opportunity" to file suit as required by Plaintiff's argument here would be a "misreading" of the provision's plain language:

> Plaintiffs appear to be reading the two limitations provisions in the Legal Actions section of the Plan not as deadlines but as windows of opportunity.  They may think that the three-year provision grants the right to file suit within that three-year period, even if the one-year period has expired.  That, however, is a misreading of the plain language of the Plan.  It does not say that you have the right to file suit within three years of furnishing a proof of loss; it says that you cannot file suit more than three years after proof of loss is required.

*J.H.*, 137 F.4th at 1152.

Based on the foregoing, the Court concludes that Plaintiff's proffered reading of the limitation provision is unreasonable as a matter of law.  It simply ignores the one-year limitation altogether.  If, as Plaintiff alleges, he did not understand the provision's reference to "Section 502(a) of ERISA" in the second sentence, reasonable diligence required him to take steps to gain an understanding, such as consulting counsel, inquiring of Defendants, or engaging in independent research.  *See Motta*, 717 F.3d at 846-47 (holding that the plaintiff could not avail herself of equitable tolling when the untimely filing of her claim could have been avoided with due diligence, including making inquiries as to proper government agency with which to file her claim).  Plaintiff does not allege he made any such efforts; it appears he simply decided to ignore the one-year provision.  Nor did Plaintiff review the Wrap Plan he admits

was provided to him in December 2023, which contained a statement of the one-year limitation period that Plaintiff admits was clear.

"A plaintiff is not reasonably diligent when [the plaintiff] fails to investigate basic issues that are relevant to [the plaintiff's] claim or to proceed with it in a reasonably prompt fashion." *Wilson*, 613 F. App'x at 845. On the facts alleged in the amended complaint and shown in the undisputed Plan documents, Plaintiff failed to justifiably or reasonably rely on the Plan limitation provision and failed to act with reasonable diligence when he waited until November 2024 to file suit. This renders equitable tolling and equitable estoppel inapplicable on the facts alleged in the amended complaint.

<u>Defendants' Alleged Regulatory Violation</u>

Plaintiff raises another argument to avoid the Plan limitation period. He argues that Defendants' letters denying his administrative claims failed to include an express statement as to the Plan limitation period for filing suit as required under 29 C.F.R. § 2560.503-1(g)(1)(iv). Plaintiff urges the Court follow cases from other jurisdictions that have declined to enforce plan limitation provisions when defendants violated the regulation, regardless of whether the plaintiff could establish the usual elements required for equitable tolling or equitable estoppel. *See Santana-Diaz v. Metro. Life Ins. Co.*, 816 F.3d 172 (1st Cir. 2016); *Mirza v. Ins. Admin. of Am., Inc.*, 800 F.3d 129 (3d Cir. 2014); *Moyer v. Metro. Life Ins. Co.*, 762 F.3d 503 (6th Cir. 2014).[7]

---

[7] Plaintiff's amended complaint asserts the regulatory violation as a basis to apply equitable estoppel, and Plaintiff appears to adopt the estoppel theory in his memorandum. It is worth noting, however, that the cases from other circuits on which Plaintiff relies do not frame their holding as one of estoppel.

The Eleventh Circuit in *Wilson* expressly rejected this approach because it is not based on traditional equitable principles but instead improperly "assume[s] unenforceability" as a result of the alleged violation. *See Wilson*, 613 F. App'x at 844 & n.3.[8] Although *Wilson* is an unpublished decision, the Court finds it more persuasive than the decisions from other circuits relied on by Plaintiff. *See Malave v. Life Ins. Co. of N. Am.*, No. 8:17-1583-T-17BM, 2017 WL 6611322, at *2 (M.D. Fla. Oct. 26, 2017) (dismissing complaint based on plan limitation provision, following *Wilson* and rejecting the approach in other circuits). *Wilson's* approach is also more consistent with the framework endorsed by the Supreme Court in *Heimeshoff*, which emphasizes the need to enforce reasonable time limits on filing suit set forth in a plan unless the plaintiff can establish the elements of estoppel or tolling or a controlling statute prohibits enforcement of the agreed-upon limitation.

The Court therefore concludes that, even assuming Defendants violated the regulation, Plaintiff still must establish the elements of tolling or estoppel, including reasonable reliance and diligence, to avoid the Plan limitation provision. For the reasons discussed above, on the facts alleged in the amended complaint and the undisputed language in the Plan documents, Plaintiff has failed to do so.

Application of 29 U.S.C. § 1110

In a final effort to save at least the fiduciary duty claims in Counts II and III from dismissal, Plaintiff argues that the Plan limitation provision as applied to these

---

[8] Plaintiff extensively discusses statements in *Wilson* that question whether the regulation should be read as requiring that denial letters inform participants of the time limits on filing a court action. *Wilson* did discuss this point in dictum, but its holding assumed the defendant had violated the regulation and concluded that, even so, the plaintiff could not proceed without establishing a basis for equitable tolling. The same is true here.

claims is void under 29 U.S.C. § 1110.  That statute invalidates any contract provision that "purports to relieve" a fiduciary from responsibility or liability for any obligation or duty under ERISA.  Plaintiff argues that the Plan's one year limitation period is such a provision.

As discussed above, a plan agreement to a limitation period shorter than the one provided by statute will not be enforced where a controlling statute prohibits it. The Court concludes, however, that § 1110 does not prohibit or invalidate the Plan limitation provision because the Plan provision does not "purport to relieve" a fiduciary of its responsibility or liability.  It merely shortens the time period that would otherwise be available under the statute of limitation for the Plaintiff to enforce that responsibility or liability.

Section 1110 prohibits what are typically referred to as "exculpatory" provisions.  *See Arnold v. Paredes*, 714 F. Supp. 3d 962, 978 (M.D. Tenn. 2024) (describing § 1110 as prohibiting exculpatory provisions); *Chicago Bd. Options Exch., Inc. v. Conn. Gen. Life Ins. Co.*, 713 F.2d 254, 259 (7th Cir. 1983) (same).  But time limitations on filing suit and similar provisions in contracts and insurance policies are generally viewed as imposing conditions precedent, not as exculpatory provisions.  *See, e.g.*, *Stephan v. Goldinger*, 325 F.3d 874, 877 (7th Cir. 2003) (explaining that a contract provision providing for a shorter limitation period from that otherwise applicable was not exculpatory) (Posner, J.); *Keiting v. Skauge*, 543 N.W.2d 565, 568 (Wis. Ct. App. 1995) (holding that a contract that shortened the limitations period was not a disfavored exculpatory contract because it did not "relieve either party . . . from any liability.  It merely alter[ed] the limitations period which the law would otherwise

impose.").[9]  The Court therefore concludes that the Plan limitation provision does not "purport to relieve" a fiduciary of liability in violation of § 1110.

Plaintiff relies on *Kramer v. Smith Barney*, 80 F.3d 1080 (5th Cir. 1996), in support of his contrary argument.  That case held that claims brought by a plan trustee against a securities broker were subject to arbitration under the parties' agreement.  *Id.* at 1081-84.  The arbitration agreement, however, incorporated an American Stock Exchange rule requiring a claimant to pursue arbitration in a shorter time frame than the one provided in the ERISA statute.  *Id.* at 1082, 1085.  *Kramer* held that the time limitation was void under § 1110 because it "would impair [the plaintiff's] substantive rights."  *Id.* at 1085.

*Kramer* does offer support for Plaintiff's position here, but the opinion contains no analysis and no relevant authority to support its conclusion.  The *Kramer* court cited three cases, but two of them merely addressed whether ERISA fiduciary duty claims were arbitrable and said nothing about time limitations on filing a claim.  *See id.*  The one cited case that addressed a time limitation, *De Coninck v. Provident Life & Accident Ins. Co.*, 747 F. Supp. 627 (D. Kan 1990), did not mention § 1110 at all and simply assumed that the federal statute of limitation for fiduciary duty claims would necessarily control over the parties' agreement, an approach contrary to *Heimeshoff*.  Therefore, to the extent *Kramer*'s holding would apply to the situation here, the Court finds it unpersuasive and respectfully declines to follow it.

---

[9] *See also Nationwide Prop. & Cas. Ins. Co. v. Fireline Corp.*, No. 1:20-CV-00684-JRR, 2023 WL 3995667, at *2 (D. Md. June 14, 2023); *Cobra Tactical, Inc. v. Payment All. Int'l Inc.*, 315 F. Supp. 3d 1342, 1351 (N.D. Ga. 2018); *Bank of Am., N.A. v. Putnal Seed & Grain, Inc.*, 965 So. 2d 300, 301 (Fla. 1st DCA 2007); *A.H.A. Gen. Const., Inc. v. New York City Hous. Auth.*, 699 N.E.2d 368, 374 (N.Y. 1998).

*Count IV*

Count IV of the complaint asserts a claim for statutory penalties under 29 U.S.C. §§ 1132(a)(1)(A) and (c) against the "Plan Administrator" while including in the claim allegations that both Anthem and Amgen failed to provide Plaintiff with requested documents required to be disclosed under 29 U.S.C. § 1024(b)(4).

Defendants seek dismissal of this count on the ground that Anthem is not a proper defendant on this claim because it is not the Plan Administrator and because Amgen, which is the Plan Administrator, timely provided Plaintiff with all the documents he was entitled to receive under the statute.  In his response, Plaintiff has narrowed his claim by eliminating Anthem as a defendant and focusing on Amgen's failure to produce an administrative services agreement ("ASA") between the Plan, Anthem, and Amgen.[10]  Accordingly, Count IV is dismissed as against Anthem in its entirety and as against Amgen except to the extent it alleges Amgen failed to produce any ASAs under § 1024(b)(4).  The discussion below will address only the claim against Amgen relating to the ASA.

Under § 1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, *contract, or other instruments under which the plan is established or operated.*"  29 U.S.C. § 1024(b)(4) (emphasis added).  The Eleventh Circuit has interpreted this provision as limited to "formal legal documents" as

---

[10] Plaintiff has therefore abandoned his claim based on the failure to produce the medical necessity criteria for mental health and substance abuse (the parity analysis), and medical necessity criteria for skilled nursing and rehabilitation facility treatment.

opposed to documents that are merely "related to" the Plan.  *See Williamson v. Travelport, LP*, 953 F.3d 1278, 1294 (11th Cir. 2020).  While neither side has submitted a copy of the ASA or ASAs at issue in this case, Defendants do not dispute that such an agreement is a contract or other instrument and is a "formal legal document."

The question presented, then, is whether an ASA is a "contract or other instrument[] under which the plan is established or operated."  The Eleventh Circuit has yet to address this issue.  Other circuits, however, have concluded that ASAs fall within the statutory reference to "contract[s] or other instrument[s] under which the plan is established or operated" and that production of ASAs upon request is therefore mandatory under the statute.  *See M.S. v. Premera Blue Cross*, 118 F.4th 1248, 1266-67 (10th Cir. 2024) (explaining that a plan is "established and operated" under an ASA, and production is therefore required by the plain language of § 1024(b)(4)); *see also Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 796 (7th Cir. 2009) (explaining that the agreement "governs the operation of the Plan in the sense that it defines the respective roles" between the plan and the plan administrator and a plaintiff is therefore entitled to it under § 1024(b)).  The Court finds these decisions persuasive.

Defendants rely principally on an unreported Ninth Circuit case, *Hively v. BBA Aviation Ben. Plan*, No. 3:05-cv-214 TMB, 2007 WL 9718331 (D. Alaska 2007), *aff'd*, 331 F. App'x 510 (9th Cir. 2009).  In *Hively*, the district court granted summary judgment for the defendant, holding that the defendant was not required to produce an ASA because the ASA did not "create any rights in favor of plan beneficiaries" and "relate[d] 'only to the manner in which the plan is operated.'"  *Id*. at *3 (quoting

*Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F.3d 1198, 1202 (9th Cir. 2003)).  The Ninth Circuit affirmed on the same reasoning.

The Court finds *Hively* unpersuasive.  The statutory language could have, but does not, limit the required production to documents that create rights in favor of plan beneficiaries.  Instead, it requires production of contracts under which the plan is established or operated.  The Court also fails to see how a contract that "relate[s] . . . to the manner the plan in which the plan is operated," which *Hively* concludes need not be produced, differs from a contract "under which the plan is . . . operated," which the statute says must be produced.[11]

At this juncture, therefore, the Court concludes that the allegations of the complaint are sufficient to bring any ASAs between the Plan, Anthem, and Amgen within the scope of documents Amgen was required to produce under § 1024(b)(4), and therefore Defendants' motion to dismiss as to this issue must be denied.  This ruling is, of course, without prejudice to Defendants' ability to raise the same point in a motion for summary judgment if the terms of the ASA or ASAs support Defendants' position.  It should also be noted that the assessment of penalties for a violation of § 1024(b)(4) is discretionary, and the Court's holding that the complaint sufficiently alleges the existence of a violation does not necessarily mean that the Court will

---

[11] The Court is also unpersuaded by *Grant v. Eaton Corp. Long Term Disability Plan*, No. 3:10CV164TSL-JMR, 2013 WL 12180489 (S.D. Miss. May 3, 2013), which followed the same general approach as *Hively*.  *Grant* also relied on specific terms of the ASA in that case.  No ASAs have been provided to the Court in this case.  Defendants also cite decisions holding that ASAs do not define a participant's rights under the plan.  *See, e.g.*, *Prolow v. Aetna Life Ins. Co.*, 584 F. Supp. 3d 1118, 1146-47 (S.D. Fla. 2022).  As discussed above, § 1024(b)(4) does not limit the required production to documents defining the rights of plan beneficiaries and these cases are therefore of no relevance to the Court's decision.

assess the requested penalties on Amgen assuming a violation is ultimately found to have occurred.

## Conclusion

Because the Court has concluded that Counts I through III are time-barred, it appears that amendment is likely futile. However, in an abundance of caution, the Court will grant leave for Plaintiff to file a second amended complaint, if he may do so in good faith. Additionally, the Court does not reach Defendants' argument that Count II is impermissibly duplicative of Plaintiff's § 1132(a)(1)(B) claim because Count II is dismissed as time-barred. Count IV brought pursuant to § 1024(b)(4) remains viable as against Amgen for failure to provide any administrative services agreements.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. "Defendants' Joint Motion to Dismiss Amended Complaint" (Doc. 49) is **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

2. The motion is **GRANTED** as to Counts I, II, and III.

3. The motion is **GRANTED** as to Count IV as to Defendant Anthem Blue Cross. The motion is further **GRANTED** as to Count IV against Defendant Amgen to the extent Plaintiff alleges Amgen failed to produce medical necessity criteria for mental health and substance abuse and medical necessity criteria for skilled nursing and rehabilitation facility treatment. The motion as to Count IV is otherwise **DENIED**.

4. Plaintiff is directed to file an amended complaint on or before March 23, 2026.

5. The parties are directed to file their joint case management report on or before March 30, 2026.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 2nd day of March, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE